GALST, Respondent, vs. AMERICAN LADDER COMPANY, Appellant.

*March 13—April 4, 1917.*

*Negligence: Injury from defect in step-ladder: Liability of manufacturer: Evidence: Appeal: Motion to vacate judgment and for new trial.*

1. To render the manufacturer liable for injuries alleged to have been caused by defective construction of a standard article (in this case a step-ladder) intended for a certain use, it must be shown that it left his hands in a faulty condition.

2. Evidence that, after an accident caused by the spreading of the legs of a step-ladder, a staple which held a heavy cord intended to prevent such spreading was found to be loose, was insufficient to prove that the staple was loose when the ladder left the hands of the manufacturer six months before, there being testimony that such ladders were repeatedly inspected during the process of manufacture and were again carefully inspected before shipment; that the ladder in question had been handled at least five times after shipment before being used; and that no inspection of it had been made by the retail dealer, by the purchaser, or by the workman who had used it, prior to the accident.

3. It appearing in this case that a motion for a new trial, made on the day after judgment had been entered without notice, was treated by the trial court as in effect a motion to vacate the judgment, it is *held* that, under all the circumstances, it should have that effect, so that on the appeal from the judgment the questions raised are properly before the court.

APPEAL from a judgment of the circuit court for Milwaukee county: MARTIN L. LUECK, Judge. *Reversed.*

Action for personal injuries. The complaint alleges that plaintiff was a painter employed by a firm of painters and paperhangers; that the defendant is the manufacturer of a step-ladder known as the Miller step-ladder, designed for the use of painters, calciminers, and paperhangers; that the defendant prior to the day of the accident in February, 1912, sold to Patek Brothers, dealers in Milwaukee, a consignment of Miller step-ladders; that prior to February 11, 1912, Patek Brothers sold to plaintiff's employers some step-ladders, including the one in question; that said step-ladder is con-

structed with four uprights with steps across the front and braces across the back, and the front and back are held together by a piece of heavy cord attached to two staples on the uprights in the rear and running through one of the steps in front, the string being fastened to the staples by a sailor's half-hitch, and that when properly fastened this cord prevents the ladder from spreading; "that said ladder was "carelessly, negligently, and imperfectly manufactured in this, that the said rope so attached to said legs was imperfectly, carelessly, and negligently so fastened to one of the legs of said ladder; that it would not and did not prevent the said legs spreading so far apart while the ladder was being used in the manner contemplated for it to be used," which the defendant well knew or ought to have known; that while plaintiff was using the ladder in the manner in which it was intended to be used the legs spread, causing plaintiff to fall, by reason of which he sustained serious injuries.

The defendant alleged that it was engaged in the manufacture of a ladder known as the Miller step-ladder; that all of the ladders manufactured by the defendant were thoroughly tested at the time of manufacture, and that before they were shipped they were again tested, and that no ladders are delivered by the defendant to any of its customers which are not approximately perfect in material and construction. The answer then alleged contributory negligence on the part of the plaintiff and otherwise generally denied the allegations of the complaint.

There was a general verdict in favor of plaintiff for $800. The verdict was returned into court on the 9th of June. On June 13th plaintiff entered judgment on the verdict without notice. On June 14th defendant served its motion for a new trial and for judgment notwithstanding the verdict. The order overruling these motions was entered on July 15th. The notice of entry of judgment was dated July 8th and was not served upon the attorneys for the appellant until July

21st. There was no formal motion to vacate the judgment, but the trial court evidently treated the matter as if such a motion were made, and in disposing of the motions to set aside the verdict and for judgment notwithstanding the verdict the court made the following order:

"It is ordered that the defendant's several motions be and they are hereby denied; and that the judgment entered upon the verdict as returned by the jury stand as and for the judgment in said action."

From such judgment defendant appeals.

For the appellant there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Albert K. Stebbins,* of counsel, all of Milwaukee, and a reply brief and oral argument by *Mr. Stebbins.*

For the respondent there was a brief by *Lehr & Kiefer* and *Gill & Barry,* attorneys, and *Charles S. Thompson,* of counsel, all of Milwaukee, and oral argument by *Mr. Thompson.*

ROSENBERRY, J. The law claimed to be applicable to this case, so far as established by the decisions of this court, is to be found in *Bright v. Barnett & Record Co.* 88 Wis. 299, 60 N. W. 418; *Hasbrouck v. Armour & Co.* 139 Wis. 357, 121 N. W. 157; *Kerwin v. Chippewa S. M. Co.* 163 Wis. 428, 157 N. W. 1101.

Plaintiff does not claim that the step-ladder in question was an article inherently dangerous, but that it was one which by reason of negligent construction was manifestly dangerous when used as it was intended to be used, and that therefore the defendant, who manufactured and delivered the ladder in question without notice of its dangerous character due to its defective construction, is liable to plaintiff, who was injured. In the view that we take of this case it will not be necessary to discuss the law as to the liability of a manufacturer of a standard article intended for a certain use which is dangerous on account of faulty construction.

In any event, in order to make a manufacturer liable, it must appear that the article left the hands of the manufacturer in a faulty condition. There is no claim in this case that the method adopted for preventing the spread of the ladder was not a proper one to be adopted. The condition of the ladder was testified to by two witnesses. The witness Garrow said:

"I looked it all over and called several witnesses to see what the damage was. I found that the rope had slipped from the tie in the staple. I examined the staple and found that it was loose. The hitch had pulled out from the staple. I should say the staple was out a little over a quarter of an inch. The staple, it seems, had not been fastened strong enough and that pulled through."

Blakely, a witness for the defendant, testified:

"On this ladder you can see where the staple was driven down in there by the impression in the wood. Q. What have you to say about that staple being down tight now? A. It is absolutely in the right place and it was."

It appears that the ladders in question were ordered from the defendant company by Patek Brothers, local dealers, in July, and received by them August 2, 1911, and were delivered by Patek Brothers on February 10, 1912. The testimony on the part of the defendant showed that the ladders were repeatedly inspected during the process of manufacture and prior to shipment were again carefully inspected; that part of the inspection consists in the examination of the rope and staples, and that the present case is the first instance in which the rope or cord had been known to pull through a staple in eight years' experience; and that a ladder found defective was immediately taken out and not shipped to customers.

The ladder in question was handled at least five times after it left defendant's hands before it was used, and it is a matter of common knowledge that the staple might have been loosened by careless handling and in other ways. Under

such circumstances testimony that the staple was loose on the morning of February 10, 1912, comes far short of establishing the fact that the staple was loose at the time it left the hands of the manufacturer in August, 1911. The situation here is quite different than it would be if the defect were a knot, cross-grained or dozy material, or other inherent defects of a similar kind. No inspection was made of the ladder by the retail dealer, by the firm who purchased it, or by the man who used it, prior to the time of the accident. The evidence as a whole tends to establish the fact that there was a change in the condition of the ladder between the time it left the hands of the manufacturer and the time it was used by the plaintiff. Without proof that the ladder was defective when shipped by the manufacturer, plaintiff cannot recover under any theory of the law.

Plaintiff contends that by reason of the failure of the defendant to make a motion to vacate the judgment with a motion to set aside the verdict and grant a new trial the appeal is not properly before this court. *Bailey v. Costello,* 94 Wis. 87, 68 N. W. 663. We think it appears that the trial court treated the motion to set aside the verdict and grant a new trial as in effect a motion to vacate the judgment, and that fact sufficiently appears from the language of the trial court directing that the judgment entered upon the verdict stand as and for the judgment in said action, and that under the circumstances disclosed by this record the questions raised are properly before this court.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.