HASBROUCK, Appellant, vs. ARMOUR & COMPANY and another, Respondents.

*February 18—May 11, 1909.*

*Appeal and error: Theory of cause: Review: Action: Joinder of causes of action: Pleading: Construction of allegations: Legal conclusions: "Negligence" defined: Breach of duty: Liability: Guaranty: Warranty.*

1. Where the averments of a complaint are appropriate to an action in tort, and the pleader in his brief, on appeal from an order sustaining a demurrer thereto, asserts that the action is in tort founded upon negligence alleged in such complaint, the appellate court will not consider whether or not there is intent to state any other or different cause of action.

2. Before a court can determine whether or not two causes of action are improperly united, it must ascertain whether there are two causes of action and then determine whether they are such as may be united.

3. In an action against two defendants, the complaint averring successive sales of a commodity by one defendant to the other and by the other to the plaintiff, an averment that both defendants "jointly caused to be placed upon the market and to be sold to the general public" such commodity is a legal inference of the pleader from the specific facts otherwise appearing in the complaint.

4. "Negligence" in the law consists of the omission or inadvertently wrongful exercise of duty, which omission or exercise is the legal cause of damage to another.

5. Such duty may, by operation of law, arise between two persons in contract relations, or may be imposed independently of contract relations by the written or unwritten law, or may be due to persons or to particular classes of persons. Such duty is, not to never fail, but not to fail under such circumstances that a reasonably prudent person might infer injury, as a natural and ordinary consequence of such failure, to one to whom the duty is due.

6. With respect to the breach of a duty due from one person to all persons the liability of the wrongdoer does not depend upon privity between himself and the person injured.

7. The duty which the law imposes in favor of the user or consumer upon a manufacturer or dealer selling at wholesale to dealers generally, but not to consumers directly, is identical with the

Hasbrouck v. Armour & Co. 139 Wis. 357.

duty imposed by law on all persons with respect to the public generally, and there is no privity, no particular relation carrying with it special duties or a special degree of care in such cases.

8. A manufacturer or dealer who puts out, sells, or delivers, without notice to others of its dangerous qualities, an article which invites a certain use, and which article is not inherently dangerous, but which by reason of negligent construction he knows to be imminently dangerous to life and limb, or is manifestly dangerous when used as it is intended to be used, is liable to any person suffering an injury therefrom, which injury might have been reasonably anticipated.

9. A manufacturer or dealer who puts out and sells articles inherently dangerous, without notice of their dangerous nature, or with a misleading notice, or negligently in any other way, is liable for an injury to any third person which might have been reasonably foreseen by the manufacturer or dealer in the exercise of ordinary care.

10. A manufacturer or dealer who makes and sells an article intended to preserve or affect human life is liable to third persons sustaining injury caused by his negligence in preparing, compounding, labeling, or directing the use of the article, provided injury to others might have been reasonably foreseen in the exercise of ordinary care.

11. A guaranty or warranty not knowingly false or fraudulent does not affect liability in tort for negligence.

12. An unintentional or negligent dropping of a needle into a mixture from which toilet soap is made is so remote a possibility, such an extraordinary occurrence, and serious injury to the consumer from using such soap for toilet purposes such an unusual and remote consequence of such act, that thereby there is no breach of a duty imposed upon the manufacturer for the protection of the vendee of his vendee, and no actionable negligence is shown.

13. In such case the retailer, who did not know that the needle was imbedded in the soap, and who could not by the exercise of ordinary care have ascertained its presence therein, is not liable for injuries resulting to the purchaser from the needle.

DODGE and BARNES, JJ., dissent.

APPEAL from an order of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

The appeal is from an order sustaining separate demurrers of the respondents to appellant's complaint.

For the appellant there was a brief by *Eaton & Eaton*, at-

torneys, and *H. B. Jackson,* of counsel, and oral argument by, *Mr. M. H. Eaton* and *Mr. Jackson.*

Among other references upon the part of the appellant were the following: 21 Am. & Eng. Ency. of Law (2d ed.) 461, 462; *Huset v. J. I. Case T. M. Co.* 120 Fed. 865; *Schubert v. J. R. Clark Co.* 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818; *Watson v. Augusta B. Co.* 124 Ga. 121, 52 S. E. 152; *Bright v. Barnett & R. Co.* 88 Wis. 299, 60 N. W. 418, 26 L. R. A. 524; *Cameron v. Mount,* 86 Wis. 477, 56 N. W. 1094; *Anderson v. Smith,* 104 Minn. 40, 115 N. W. 743; *Thomas v. Winchester,* 6 N. Y. 397; *Norton v. Sewall,* 106 Mass. 143; *Bishop v. Weber,* 139 Mass. 411, 1 N. E. 154; *Elkins v. McKean,* 79 Pa. St. 493.

For the respondent *S. Heymann Company* there was a brief by *Williams & Williams,* and oral argument by *G. E. Williams.*

Among other references upon the part of the respondent *S. Heymann Company* were the following: *Akers v. Overbeck,* 18 Misc. 198, 41 N. Y. Supp. 382; *Sheffer v. Willoughby,* 163 Ill. 518, 45 N. E. 253; *Green v. Ashland W. Co.* 101 Wis. 258, 77 N. W. 722; *McQuaid v. Ross,* 85 Wis. 492, 55 N. W. 705.

For the respondent *Armour & Co.* there was a brief by *Thompsons, Pinkerton & Jackson,* and oral argument by *J. C. Thompson* and *C. D. Jackson.*

Among other references upon the part of the respondent *Armour & Co.* were the following: *Winterbottom v. Wright,* 10 M. & W. 109; *Huset v. J. I. Case T. M. Co.* 120 Fed. 865, 866; *Lewis v. Terry,* 111 Cal. 39, 43 Pac. 398, 31 L. R. A. 220; *Wellington v. Downer K. O. Co.* 104 Mass. 64; *Skinn v. Reutter,* 135 Mich. 57, 97 N. W. 152; *Savings Bank v. Ward,* 100 U. S. 195; *Peters v. Johnson,* 50 W. Va. 644, 41 S. E. 190, 57 L. R. A. 428; *Ives v. Welden,* 114 Iowa, 476, 87 N. W. 408, 54 L. R. A. 854; *Heaven v. Pender,* L. R. 11 Q. B. Div. 503; *Zieman v. Kieckhefer E. Mfg. Co.* 90 Wis. 497, 63 N. W. 1021; *Heizer v. Kingsland & D. Mfg. Co.* 110

Mo. 605, 19 S. W. 630, 15 L. R. A. 821; *O'Neill v. James,*
138 Mich. 567, 101 N. W. 828, 68 L. R. A. 342; *Losee v.*
*Clute,* 51 N. Y. 494, 10 Am. Rep. 638; *Loop v. Litchfield,* 42
N. Y. 351; *Nelson v. Armour P. Co.* 76 Ark. 352, 353, 90
S. W. 288; *Marvin S. Co. v. Ward,* 46 N. J. Law, 19; *Mc-*
*Caffrey v. Mossberg & G. Mfg. Co.* 23 R. I. 381, 50 Atl. 651;
*Salmon v. Libby,* 114 Ill. App. 258; *Slattery v. Colgate,* 25
R. I. 220, 55 Atl. 639; *Goodlander M. Co. v. Standard O. Co.*
63 Fed. 400; *Standard O. Co. v. Murray,* 119 Fed. 572;
*Lukens v. Freiund,* 27 Kan. 664.

TIMLIN, J.    The complaint averred that the respondent
Armour & Co. is a corporation of Illinois, licensed to do busi-
ness in this state, and the respondent *S. Heymann Company*
is a Wisconsin corporation.    The former is engaged in the
manufacture and sale throughout this state of toilet soap,
and the latter is doing a mercantile business in the city of
Oshkosh.    *Armour & Co.* make and sell "Armour's & Co.'s
Toilet Soap No. 175" as a harmless article for the purpose of
use in cleaning the face, hands, and body, and hold out to the
public that this soap would supply every need for all toilet
purposes, and guarantee the purity and harmlessness thereof,
and that the soap is free and clear from all harmful ingredi-
ents or foreign substances which might injure persons using
the same in the ordinary manner.    On and prior to Septem-
ber 20, 1906, *Armour & Co.,* its agents, servants, and em-
ployees, carelessly and negligently permitted and allowed a
cake of the soap so manufactured by it to contain a needle or
small round sharp piece of steel embedded therein.    This
made the use of said soap dangerous and was liable to cause
injury to persons using the soap in the ordinary and usual
manner.    Some time prior to September 20, 1906, *Armour*
& Co. sold and delivered to *S. Heymann Company* a quantity
of this soap, in which was contained the defective piece or
cake above described, in which the needle was so concealed as

.not to be visible to the naked eye. This was purchased by the latter from the former to be sold by the latter to the general public and with the understanding that the soap was harmless and free from all dangerous particles or ingredients which might or which would injure the body of the person using the same for toilet purposes. Both defendants then jointly caused to be placed upon the market and sold to the general public this soap so negligently made containing this needle, and the plaintiff purchased from *S. Heymann Company* a quantity of this kind of soap and received the defective cake or piece above described. While properly using the soap so purchased for toilet purposes the plaintiff was injured by this needle in the soap entering the palm of his right hand and producing the most serious consequences, including paralysis and disability.

The pleader says this injury was sustained by reason of "want of ordinary care and prudence of the defendants, their agents, servants, and employees, in manufacturing said soap and putting the same on the market for sale for general use and allowing a sharp piece of needle or steel to become embedded therein which was liable to injure persons using the same in the ordinary and usual manner." Each of the defendants demurred: "(1) For that it appears . . . that several causes of action have been improperly united. (2) For that it appears . . . that the complaint does not state facts sufficient to constitute a cause of action against this defendant."

The pleader, appellant in this court, begins his brief with this statement: "This is an action in tort founded upon negligence alleged in the complaint, set forth at length in the printed case." In the face of this authoritative declaration ·of the purpose of the pleader we shall spend no time searching for any other or different intent on his part. The averments of the pleading are appropriate to such declaration.

Before we can determine whether or not two causes of ac-

tion are improperly united we must find the two causes of action and then ascertain whether they are such as may be joined. The complaint avers that both defendants "jointly caused to be placed on the market and to be sold to the general public *Armour & Co.'s* toilet soap so carelessly and negligently made containing said sharp round piece of steel or needle." But in the face of express averments in the same pleading that *Armour & Co.* manufactured the soap and negligently permitted a cake of soap so manufactured by it to contain this needle, that *Armour & Co.* sold and delivered to its codefendant quantities of its soap, including a box of soap containing this defective piece or cake of soap, and that the plaintiff purchased from *S. Heymann Company,* the last-quoted words must be considered a conclusion or inference of the pleader from the specific facts otherwise appearing in the complaint. So with the averment "that the purity and harmlessness [of the soap] was guaranteed by the said defendants and the same to be free and clear from all foreign substances which might injure the person using the same in the ordinary and usual manner." There being no purchase by the plaintiff from *Armour & Co.,* but the latter having sold to *S. Heymann Company,* and *S. Heymann Company* thereafter to the plaintiff, and no joint act of sale or contract by the defendants, and the plaintiff's claiming in tort, this averment must also be deemed a legal inference of the pleader from the facts stated, and it must be considered that the soap was offered to the public successively in the usual manner by each defendant as a harmless and useful toilet article, or that in each successive sale the vendor so represented the soap to his immediate purchaser.

The first inquiry, therefore, is whether the foregoing pleading states a cause of action for negligence. Negligence in law consists in the omission or inadvertently wrongful exercise of a duty, which omission or exercise is the legal cause of damage to another. This duty may by operation of law arise be-

tween persons who by contract bring themselves into certain
relations, as bailor and bailee, carrier and passenger, master
and servant, and others.   Or the duty may be imposed inde-
pendently of contract relations by statute, ordinance, or rule
of the common law, and due only to particular persons or
classes of persons, as users of a highway or other way, abut-
ting owners, fellow travelers on the highway, and others.   Or
the duty may be due to all persons, as the duty to refrain
from acts apparently dangerous to life or limb, as when in
play "the fool casteth firebrands and arrows;" or where one
exercises a conceded right in a manner apparently and un-
necessarily dangerous.   The duty is, not to never fail, but
not to fail under such circumstances that a reasonably pru-
dent person might infer injury, as a natural and ordinary
consequence of such failure, to one to whom the duty is due.
In each of these relations legal duty may vary in kind or in
the degree of care required, or the act or omission may vary
in the obviousness of its consequences, and therefore legal in-
vestigation, in order to judge of the quality of the act omitted
or improperly performed, frequently inquires in what rela-
tion the parties to the action stood as to one another.   This
relation has been termed "privity," and in the law of negli-
gence we find cases asserting and others denying this require-
ment of privity between the party injured and the party neg-
ligent.   But with respect to the breach of a duty due from
the defendant to all persons, it must be apparent that no such
inquiry is relevant.   A manufacturer, dealer, or other person
may bring himself, however, into privity with others under
exceptional circumstances, and thereby be charged with a
duty toward such person different or greater than that which
he owes to all persons, as in the case of a purchase by the
vendee from the manufacturer or dealer for the use of a third
person specially designated to the manufacturer or dealer, as
in *George v. Skivington,* L. R. 5 Exch. 1, and *Woodward v.
Miller,* 119 Ga. 618, 46 S. E. 847; and in the case of implied

invitation to servants of another master to use a defective appliance furnished to that master for the use of the latter and his servants, as in *Bright v. Barnett & R. Co.* 88 Wis. 299, 60 N. W. 418; *Coughtry v. Globe W. Co.* 56 N. Y. 124, and *Heaven v. Pender,* L. R. 11 Q. B. Div. 503; and in the case of a caterer furnishing a dinner for the use of the master of the feast and the guests of the latter, where one of the guests is injured by the negligence of the caterer in failing to properly prepare or select the food (*Bishop v. Weber,* 139 Mass. 411, 1 N. E. 154); and in the case of a manufacturer or vendor of remedies who sells to a dealer, but undertakes by directions or recommendations on or accompanying the package to communicate directly with the consumer or user (*Blood B. Co. v. Cooper,* 83 Ga. 457, 10 S. E. 118). But where the manufacturer or vendor had not at the time of the injury brought himself into any privity with the person injured within the rule of the foregoing cases or similar and analogous circumstances, the duty which the law imposes in favor of the user or consumer upon a manufacturer or dealer selling at wholesale to dealers generally, but not selling to consumers directly, is identical with the duty imposed by law on all persons with respect to the public generally. There is no privity, no particular relation carrying with it special duties or a special degree of care in such case. *Standard Oil Co. v. Murray,* 119 Fed. 572; *Salmon v. Libby,* 114 Ill. App. 258; *McCaffrey v. Mossberg & G. Mfg. Co.* 23 R. I. 381, 50 Atl. 651; *Bragdon v. Perkins C. Co.* 87 Fed. 109; *Zieman v. Kieckhefer E. Mfg. Co.* 90 Wis. 497, 63 N. W. 1021; *Loop v. Litchfield,* 42 N. Y. 351. The cases are collected in *Huset v. J. I. Case T. M. Co.* 120 Fed. 865, and the rule well stated from the viewpoint that no duty rests upon the manufacturer and seller to dealers in favor of the purchaser from the latter, with certain specified exceptions.

The manufacturer or dealer who puts out, sells, and delivers, without notice to others of its dangerous qualities, an

article which invites a certain use, and which article is not inherently dangerous, but which by reason of negligent construction he knows to be imminently dangerous to life or limb, or is manifestly and apparently dangerous when used as it is intended to be used, is liable to any person who suffers an injury therefrom, which injury might have been reasonably anticipated. So a manufacturer or vendor putting out and selling articles inherently dangerous, such as explosives or poisons, without notice to others of their dangerous nature or qualities, or with a misleading notice or negligently in any other way, is liable for any injury to any third person which might have been reasonably foreseen by the manufacturer or dealer in the exercise of ordinary care. So a manufacturer or vendor making and selling an article intended to preserve or affect human life is liable to third persons who sustain injury caused by his negligence in preparing, compounding, labeling, or directing the use of such articles, if such injury to others might have been reasonably foreseen in the exercise of ordinary care. The reason for these rules is apparent. The manufacturer or vendor should have no immunity from duties common to all merely because he is a manufacturer or vendor. At the same time there is in the common law no authority for imposing special duties upon him by reason of any privity between him and the vendee of his vendee, except in the instances mentioned, which may be regarded as occasions of a general duty toward the public to whom the wares are offered, or as exceptions to the rule of nonliability. If a general rule of statute or common law requires him to take precautions to protect the public against a dangerous substance by proper designation of the thing manufactured or sold, he owes a duty to the public so to do, and for failure in that regard he is liable for the consequences reasonably to be anticipated. In *Ives v. Welden,* 114 Iowa, 476, 87 N. W. 408, this duty was imposed by statute; in *Thomas v. Winchester,* 6 N. Y. 397, by common law.

We must assume upon this pleading that the needle was not

knowingly placed in the soap by the manufacturer, and that the soap was sold by the manufacturer to the dealer without knowledge that it contained this needle.    There is in some sense an implied invitation to use the soap for toilet purposes, but no knowledge or reasonable means of knowledge from the ordinary composition of the product, or from anything brought to the notice of the manufacturer, that such use would be dangerous.    A guaranty or warranty not knowingly false or fraudulent does not affect the liability in tort for negligence.    The unintentional and negligent dropping of a needle into the mixture is a remote possibility, an extraordinary occurrence, and serious injury resulting from such act to persons using the soap for toilet purposes is an unusual and remote consequence of the careless dropping of such needle into the mixture.    There are no doubt well-authenticated instances of severe illness and even death resulting from a puncture or scratch by a needle or a pin; but these are not ordinary consequences of such accidents, but are extraordinary and unusual consequences, which a person of ordinary prudence and discretion standing in this relation to the user or purchaser is not expected to foresee and provide against.

"Negligence in the law is not mere carelessness, but is careless conduct under such circumstances that an ordinarily prudent person would anticipate some injury to another as a reasonable and probable result thereof."    *Johanson v. Webster Mfg. Co.* 139 Wis. 181, 120 N. W. 832.

Another definition is that "negligence consists in the failure to observe that degree of care which the law requires for the protection of the interests likely to be injuriously affected by the want of it."    *Kendrick v. Towle,* 60 Mich. 363, 367, 27 N. W. 567; *Texas & P. R. Co. v. Bigham,* 90 Tex. 223, 38 S. W. 162; *Hope v. Fall Brook C. Co.* 3 App. Div. 70, 38 N. Y. Supp. 1040; Webb's Pollock, Torts (Am. ed.) 29, 30, and cases in notes.

There was therefore in the instant case no breach of a duty

McMillan v. Fond du Lac, 139 Wis. 367.

imposed by law on the manufacturer for the protection of the public, or for the protection of the vendee of his vendee, no actionable negligence shown.  Consequently the plaintiff has failed to state a cause of action against the defendant *Armour & Co.*

With reference to the *S. Heymann Company* there is no negligence charged in the complaint.  The needle was so embedded in the soap as to be invisible to the naked eye.  The *Heymann Company* did not know of its presence in the soap. In the exercise of ordinary care it could not have been ascertained that the needle was in the soap.  This needle happened in the soap through no omission or default of theirs. They consequently are not holden to the plaintiff upon any ground of negligence.

*By the Court.*—The order sustaining the demurrer is affirmed.

DODGE and BARNES, JJ., dissent.