MILLER, Appellant, vs. MEAD-MORRISON COMPANY, Respondent.

*October 4, 1917—February 5, 1918.*

*Negligence: Defective structure: Liability of contractor to employee of owner: Knowledge that structure was imminently dangerous: Evidence: Special verdict: Instructions.*

1. Although the defendant, a contracting corporation which had built a coal-handling device for a fuel company, was guilty of negligence in respect to the fastening of a guard rail on a platform of such device and, as the jury found, the manner of fastening such rail was imminently dangerous to life and limb when used as it was intended to be used, yet if the defendant had no actual knowledge that the structure was imminently dangerous it is not liable to an employee of the fuel company who was injured through the giving way of such rail.

2. Evidence showing, among other things, that the structure had been finished and turned over to the fuel company about twenty months before the accident and during that time had been subjected to considerable strain and had been exposed to weather conditions, and that the rail which gave way was quite substantially constructed and fastened, is *held* sufficient to support a finding by the jury that defendant did not have knowledge that the manner of fastening the rail was imminently dangerous.

3. Refusal to submit in the special verdict a question as to whether defendant's employees were negligent in constructing and fastening the rail, and submission of the question whether defendant was guilty of negligence, are *held* not to have misled the jury in respect to the question relating to defendant's knowledge that the structure was dangerous, the court having charged the jury that if the employees who fastened the rail had such knowledge that fact was sufficient to charge the defendant with knowledge.

SIEBECKER, VINJE, and ESCHWEILER, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

This action was brought to recover for personal injuries sustained by the plaintiff while in the employ of the Milwaukee Western Fuel Company. The complaint charges that the plaintiff's injuries were caused by the negligence of the

defendant in the construction of a coal-handling device which the defendant furnished the Milwaukee Western Fuel Company under a contract with said fuel company. It is further alleged that subsequent to receiving the injuries complained of plaintiff made claim against his employer, Milwaukee Western Fuel Company, for compensation on account of such injuries under the provisions of secs. 2394—1 to 2394—31, Stats., inclusive, and thereby plaintiff's cause of action against the defendant was by operation of law assigned to said Milwaukee Western Fuel Company; that subsequently and on July 21, 1915, said Milwaukee Western Fuel Company assigned and set over to plaintiff said cause of action against the defendant, which is a cause of action in tort, and that this plaintiff brings this action as assignee thereof.

The action was tried to the court and a jury and the following special verdict returned:

"(1) Was the manner of fastening the rail, as constructed by the defendant, imminently dangerous to life and limb when used as it was intended to be used? A. Yes.

"(2) If you answer question number 1 'Yes,' then answer this question: Did the defendant have knowledge that that manner of fastening the rail was imminently dangerous to life and limb when used as it was intended to be used? A. No.

"(3) If you answer question number 1 'Yes,' then answer this question: Was the defendant guilty of negligence in fastening the rail in that manner? A. Yes.

"(4) If you answer question number 3 'Yes,' then answer this question: Was such negligence on defendant's part the proximate cause of plaintiff's injury? A. Yes.

"(5) Did any want of ordinary care on plaintiff's part proximately contribute to produce his injury? A. No.

"(6) What sum of money will reasonably compensate the plaintiff for the injury which he sustained on July 1, 1914? A. Six thousand dollars."

Motions to change the answer to the second question of the special verdict from "No" to "Yes" and for a new trial were made by plaintiff and denied. Defendant's motion for

judgment on the verdict was granted, and judgment ordered accordingly, from which this appeal was taken.

For the appellant there was a brief by *Joseph B. Doe* and *Schmitz, Wild & Gross* of Milwaukee, and oral argument by *Mr. Doe* and *Mr. A. J. Schmitz.* They contended, *inter alia,* that the defendant in furnishing this platform and railing for the use of the employees of the Milwaukee Western Fuel Company which they might use in the doing of their work, in effect invited and induced the plaintiff and other employees to make use of such railing in the performance of their work as such employees, and that the defendant company is liable to the plaintiff or any other workman if injured while using such platform and railing as such employee, if such injury was due to the defective and unsafe condition of the railing caused by negligent construction thereof. *Bright v. Barnett & Record Co.* 88 Wis. 299, 60 N. W. 418; *Huber v. La Crosse City R. Co.* 92 Wis. 636, 645, 66 N. W. 708; *Heaven v. Pender,* 11 Q. B. D. 503, 509; *Hasbrouck v. Armour & Co.* 139 Wis. 357, 121 N. W. 157; *Meyer v. Menominee & M. L. & T. Co.* 151 Wis. 279, 285, 138 N. W. 1008; *Indermaur v. Dames,* L. R. 1 C. P. Cas. 274; *Winterbottom v. Wright,* 10 M. & W. 109; *Thomas v. Winchester,* 6 N. Y. 397; *Coughtry v. Globe W. Co.* 56 N. Y. 124; *Gilbert v. Nagle,* 118 Mass. 278; *Huset v. J. I. Case T. M. Co.* 120 Fed. 865; *Devlin v. Smith,* 89 N. Y. 470; *Kahner v. Otis E. Co.* 96 App. Div. 169, 89 N. Y. Supp. 185; *Lisle v. Anderson* (Okla.) 159 Pac. 275, L. R. A. 1917A, 128. Such liability may also rest upon the duty which the law imposes on every one to avoid acts imminently dangerous to the persons or lives of others, when the defect is such as to render the construction in itself imminently dangerous and serious injury to any person using it is a natural and probable consequence of its use. *Bright v. Barnett & Record Co.* 88 Wis. 299, 307, 60 N. W. 418; *Hasbrouck v. Armour & Co.* 139 Wis. 357, 121 N. W. 157; *Kerwin v. Chippewa S. M. Co.* 163 Wis.

428, 157 N. W. 1101; *Devlin v. Smith,* 89 N. Y. 470; *Kahner v. Otis E. Co.* 96 App. Div. 169, 89 N. Y. Supp. 185; *Statler v. George A. Ray M. Co.* 125 App. Div. 69, 109 N. Y. Supp. 172; *Holmvik v. Parsons B. C. & S. F. Co.* 98 Minn. 424, 108 N. W. 810; *Berger v. Standard Oil Co.* 126 Ky. 155, 103 S. W. 245, 11 L. R. A. n. s. 238; *Heindirk v. Louisville E. Co.* 122 Ky. 675, 92 S. W. 608, 5 L. R. A. n. s. 92; *Olds M. Works v. Shaffer,* 145 Ky. 616, 140 S. W. 1047, 37 L. R. A. n. s. 560; *Pierce v. C. H. Bidwell T. Co.* 153 Mich. 323, 116 N. W. 1104, 1106; *Lisle v. Anderson* (Okla.) 159 Pac. 275, L. R. A. 1917A, 128; *Loehring v. Westlake C. Co.* 118 Mo. App. 163, 94 S. W. 747; *MacPherson v. Buick M. Co.* 217 N. Y. 382, 111 N. E. 1050.

*Robert R. Freeman* of Milwaukee, for the respondent, argued that the general rule, applicable to the situation here, is that when a contractor has turned over the results of his work to the contractee, and the work has been accepted and the contractor has been discharged of his contract, the liability for negligence or defects in the work later appearing shifts from the contractor to the proprietor or occupant of the premises. The theory is that the contractor owes no duty toward any person except the contractee. *Zieman v. Kieckhefer E. M. Co.* 90 Wis. 497, 501, 63 N. W. 1021; *Hasbrouck v. Armour & Co.* 139 Wis. 357, 121 N. W. 157; *Kerwin v. Chippewa S. M. Co.* 163 Wis. 428, 157 N. W. 1101; *Haley v. Swift & Co.* 152 Wis. 570, 140 N. W. 293; *Huset v. J. I. Case T. M. Co.* 120 Fed. 865; *Galbraith v. Ill. S. Co.* 133 Fed. 485; *Curtin v. Somerset,* 140 Pa. St. 70, 21 Atl. 244, 12 L. R. A. 322; *Daugherty v. Herzog,* 145 Ind. 255, 44 N. E. 457, 32 L. R. A. 837; *Fowles v. Briggs,* 116 Mich. 425, 74 N. W. 1046; *Casey v. Wrought Iron B. Co.* 114 Mo. App. 47, 89 S. W. 330; *Wood v. Sloan,* 20 N. Mex. 127, 148 Pac. 507; *Lebourdais v. Vitrified W. Co.* 194 Mass. 341, 80 N. E. 482; *Cadillac M. C. Co. v. Johnson,* 221 Fed. 801; *Du Bois E. Co. v. Fidelity T. & T. Co.* 238 Fed. 129. The

exception suggested by Timlin, J., in the *Hasbrouck Case* is in general based upon a foundation of tort involving fraud and deceit rather than negligence. Actual knowledge of the existence of the defect with an intent to wilfully conceal such defect seems to be the foundation of liability as expressed in the cases which are authority for this exception to the general rule. *Kuelling v. Roderick Lean M. Co.* 183 N. Y. 78, 75 N. E. 1098; *Peaslee-Gaulbert Co. v. McMath's Adm'r,* 148 Ky. 265, 146 S. W. 770; *Heizer v. Kingsland & D. M. Co.* 110 Mo. 605, 19 S. W. 630; *O'Brien v. American B. Co.* 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. n. s. 98.

The following opinion was filed November 13, 1917:

Kerwin, J. 1. The controlling questions upon this appeal are: (1) Whether actual notice to the defendant that the structure furnished to the Milwaukee Western Fuel Company was imminently dangerous was necessary; and (2) Whether the evidence was sufficient to support the answer of the jury to the second question of the special verdict that the defendant did not have knowledge that the structure was imminently dangerous.

A very able brief is presented on the part of the appellant, and it may be said that there is lack of harmony in the authorities cited to us in other jurisdictions. It would be difficult, if not impossible, to reconcile all the authorities upon the subject with settled rules of law. We are favored by the learned circuit judge who tried the case with an able opinion on defendant's motion for judgment on the verdict, which opinion is in the case, and presents concisely the controlling questions involved, with his conclusion that the defendant was entitled to judgment on the verdict.

We do not consider it necessary to examine authorities in other jurisdictions, because we think the law controlling this case is settled by this court. In the case of *Hasbrouck v. Armour & Co.* 139 Wis. 357, 121 N. W. 157, referred to and

quoted from by counsel on both sides, the rule is laid down thus:

"The manufacturer or dealer who put out, sells, and delivers, without notice to others of its dangerous qualities, an article which invites a certain use, and which article is not inherently dangerous, but which by reason of negligent construction he knows to be imminently dangerous to life or limb, or is manifestly and apparently dangerous when used as it is intended to be used, is liable to any person who suffers an injury therefrom, which injury might have been reasonably anticipated."

The jury found that the manner of fastening the rail as constructed by the defendant was imminently dangerous to life and limb when used as it was intended to be used, and that the defendant was guilty of negligence in fastening the rail; that the defendant did not have knowledge that the manner of fastening the rail was imminently dangerous to life and limb when used as it was intended to be used.

The particular defect in the structure furnished by the defendant was claimed to be the defective fastening of a guard rail. The contention of the appellant is that, the guard rail having been insufficiently fastened and being imminently dangerous, notice to the defendant was imputed. This contention is contrary to the rule laid down in the *Hasbrouck Case*. The knowledge referred to in the *Hasbrouck Case* means actual knowledge, and is in harmony with *Zieman v. Kieckhefer E. M. Co.* 90 Wis. 497, 501, 63 N. W. 1021, and the weight of authority in other jurisdictions. *Huset v. J. I. Case T. M. Co.* 120 Fed. 865; *Heizer v. Kingsland & D. M. Co.* 110 Mo. 605, 19 S. W. 630, 33 Am. St. Rep. 482; *Slattery v. Colgate,* 24 R. I. 220, 55 Atl. 639; *O'Brien v. American B. Co.* 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. N. S. 980; *Kuelling v. Roderick Lean M. Co.* 183 N. Y. 78, 75 N. E. 1098; *Lebourdais v. Vitrified W. Co.* 194 Mass. 341, 80 N. E. 482.

2. It is further contended by counsel for appellant that

the evidence was not sufficient to support the answer of the jury to the second question. Careful examination of the evidence convinces us that the finding is well supported by the evidence. The structure in question was finished and turned over to the Milwaukee Western Fuel Company about twenty months before the injury complained of occurred. The operation of this coal-handling device caused considerable strain upon the structure, and moreover it was exposed to weather conditions during the twenty months after it was turned over to the fuel company and before the injury.

It also appears from the evidence that the guard rail which gave way was quite substantially constructed and fastened. At least it cannot be said upon the evidence produced that defendant, as matter of law, was bound to know, in view of the manner of construction, that it was imminently dangerous. In reference to the construction the learned trial judge summed up the evidence as follows:

"The only respect in which the railing which gave way was defective and therefore imminently dangerous (as became apparent upon the happening of the accident) was the insufficient manner in which it was fastened at its west end. As to the fastening at that end, the evidence discloses that it was united by a miter joint to another horizontal railing which was at right angles to it; that both railings were pieces of 2 x 4 dressed to a thickness of one and five-eighths inches and rested at the miter joint upon an upright 2 x 4 inch wooden stanchion; that the railing which gave way was fastened to the stanchion by a nail driven vertically into the stanchion to a depth of at least one-half inch, and to the other railing by one twenty- or thirty-penny nail driven horizotally at the miter joint through it into the other railing, and by another twenty- or thirty-penny nail driven likewise horizontally at the miter joint through the other rail into the railing which gave way; and that that other rail was in turn fastened to that upright stanchion by a twenty- or thirty-penny nail driven through it vertically. If the fastening of the rail which gave way consisted solely of the shorter nail driven through it vertically into the stanchion, there might be occasion to change

the jury's answer to the second question. However, the security of that fastening was not dependent solely upon that one nail. The other railing was securely fastened to the stanchion, and the fact that the defendant's carpenter used two twenty- or thirty-penny nails to fasten the two railings together at the miter joint, in connection with the shorter nail driven vertically through the railing which gave way, seem to me to admit of the conclusion at which the jury arrived, namely, that the defendant's carpenter (and consequently the defendant, for whom he was acting) believed the manner of fastening to be adequate, and, consequently, that the defendant did not have actual knowledge that it was imminently dangerous."

3. Error is assigned because the court refused to submit the following question:

"Did the employees of defendant, *Mead-Morrison Company,* fail to exercise ordinary care in constructing and fastening the north rail attached to the platform described in the testimony, in the manner in which the same was constructed?"

The contention is that the jury were misled by the third question, in that it asked them to find whether the defendant was guilty of negligence, and it is argued that, if the court had submitted the question requested, the second question, as to the knowledge of the defendant, would have been unnecessary; that the jury became confused as to whether notice to the employees who built the structure was sufficient. It is clear that the jury could not have been misled, because the court charged them on this point most favorably to the plaintiff as follows:

"In relation to the second question, you will understand that it is sufficient to charge the defendant with such knowledge as is mentioned in that question if such knowledge was possessed at the time the work was being performed by the employee or the employees of the defendant who fastened that rail. In other words, whatever knowledge such an employee had at that time in relation to the manner in which

that rail was fastened was, as a matter of law, the knowledge of the defendant."

We do not deem it necessary to discuss the many cases cited by counsel for appellant, because we are satisfied that upon the findings of the jury, supported by the evidence, the defendant is entitled to judgment under the rule laid down by this court in *Hasbrouck v. Armour & Co.* 139 Wis. 357, 121 N. W. 157, and *Zieman v. Kieckhefer E. M. Co.* 90 Wis. 497, 501, 63 N. W. 1021. Knowledge that the structure was imminently dangerous was necessary in order to entitle the plaintiff to recover, and this knowledge was upon sufficient evidence negatived by the jury, hence no recovery can be had.

*By the Court.*—The judgment is affirmed.

The following opinion was filed February 5, 1918:

Siebecker, J. (*dissenting*). The jury found that the railing as constructed by the defendant was imminently dangerous to the life and limb of persons using it as it was intended to be used. The jury also found that the defendant had not *actual* knowledge of the defective condition of the structure. The court holds that both these findings of fact are supported by the record. I cannot concur in this result. I think the uncontradicted evidence shows that the defendant must conclusively be presumed to have had *actual* knowledge of the defective and dangerous condition of the railing. The circuit court correctly stated the rule of law to the jury on the subject of defendant's knowledge by declaring that any knowledge defendant's employees had of the dangerous and defective method by which the rail was fastened to the structure was, as *a matter of law, attributable to the defendant.* The defendant's employees necessarily knew how they fastened the rail to the structure. It must then follow that they knew, as the jury found, that it was so defectively fastened

that it was imminently dangerous to the life and limb of persons using it as it was intended to be used. The defendant, as builder of the structure, had knowledge that the railing it agreed to furnish was to be used by employees of the coal company to protect them from falling off from a platform about forty feet above the ground. It therefore had *actual* knowledge of the danger it must guard against to protect the life and limb of such employees. This duty it contracted to perform. This duty it is permitted to perform through agents and servants. The rule of law is familiar that when a person owes to another a duty which he may perform by an agent or servant, then the knowledge such agent or servant acquires in respect to such duty is the knowledge of him who employs him. Hence in this case the persons whom the defendant selected to put up this rail on the structure which it had contracted to put up for the fuel company acted for defendant in performing that duty and their acts and knowledge were the acts and knowledge of the defendant in discharging this obligation to fasten this rail so that it would not be dangerous to the life and limb of persons using it as it was intended to be used. The trial court held, and this court affirms the ruling, that under such circumstances the knowledge of such representatives of the defendant is not in law to be presumed to be the knowledge of the defendant and hence it had not actual knowledge of this defect though its employees by whom it discharged its duties *actually* knew that the rail was so defectively fastened that it was imminently dangerous to the life and limb of persons using it as it was intended to be used. To my mind this holding is clearly contrary to the well recognized rule of law that a person is bound by his agent's knowledge of the very matter he has intrusted to the agent to perform for him. It seems to me this ruling affords an easy way to the defendant to escape the duties and obligations it owed to others in erecting this structure in such manner as to protect persons using it as it

was intended to be used from defects which are dangerous to human life and limb.    All the defendant needed to do was to turn the execution of this duty over to an agent or servant, and, though he defaulted recklessly and knowingly in such duty, if he omitted to bring it to the *actual* notice of the defendant, then the defendant is relieved from responsibility. I do not understand that the *Hasbrouck* and other cases cited by the court hold directly or by implication that the *actual knowledge* of defendant's agents or servants of the imminently dangerous condition of the defective fastening of the rail in question is not *attributable to the defendant* whom they represented in performing this very duty imposed on the defendant under the contract with the fuel company. The record shows that the defendant's employees knew that the rail was defectively fastened and that it was imminently dangerous to the life and limb of the persons using it as it was intended to be used, and hence they had *actual knowledge* thereof as a matter of law.    This *actual knowledge,* I think, is attributable to the defendant who employed them to fasten the rail to the structure in such manner as to make the place safe for those using it as it was intended to be used. The jury's answer to question 2 should, in the light of this state of the record, have been changed by the trial court from "No" to "Yes" and the plaintiff have been awarded recovery of the damages found by the jury.

I am authorized to say that Justices VINJE and ESCHWEILER concur in this dissent.

A motion for a rehearing was denied, with $25 costs, on February 5, 1918.

OWEN, J., took no part.