CROUSE, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*October 24 — November 7, 1899.*

*Railroads: Injury to employee: Defective culvert: Negligence: Special verdict: Res adjudicata: Expert testimony: Future disability: Damages: Remission from verdict.*

1. In an action against a railway company for injuries to a locomotive engineer caused by a washout at a culvert. the evidence (showing, among other things, that the culvert was two feet square and had existed a number of years without being washed out; that the water from quite an extended tract of land was drained through it, and sometimes dammed up and required time to get through;

that the ground in which it was placed was sand and gravel; that
the gravel on one side of the roadbed had recently been dug away
to the depth of several feet; that a partial washout had occurred
several weeks previously, which had caused one end of the culvert
to drop down; and that when workmen went to replace it they
found the planks old and rotten), is *held* to sustain findings of the
jury that the culvert was not so constructed and maintained as to
conduct through it the water reasonably to be anticipated as likely
to come there during a series of years, and that it was so negli-
gently and carelessly constructed and maintained as to be inade-
quate for that purpose.

2. In such a case a refusal to submit for special verdict questions as to
whether a man of ordinary prudence under the circumstances
would have excavated the gravel at the side of the track, and
whether he ought reasonably to have expected that such excava-
tion would be likely to cause an injury to defendant's servants, is
*held* to have been proper in view of the undisputed fact that the
culvert had partially washed out a few weeks before the accident
by reason of the excavation, and the finding that the culvert was
negligently constructed and maintained.

3. The evidence on a second trial being substantially the same as on
the first, and the same special verdict having been rendered, it is
*held*, on appeal from the second judgment, that a decision on the
appeal from the first judgment, to the effect that the special ver-
dict covered all the material issues and that the refusal to submit
other questions and to give certain instructions was not error, is
*res adjudicata.*

4. It was shown, without dispute, that plaintiff was healthy and robust
before the accident in question, in which he received an injury to
his back, and that at the time of the trial his spinal column was
greatly affected so that he was a helpless paralytic, the symptoms
and results having followed in regular sequence and in absolute
consistency with a severe injury to the back. The medical experts
agreed in the opinion that his condition was attributable to the
injury he received, and there was no claim that he had suffered
from any other disturbing or producing cause. *Held*, that the fact
that the experts disagreed as to the name of his disease, and their
testimony that such a disease might result from other causes, did
not make it necessary to submit to the jury the question whether
plaintiff's condition was the natural and probable result of his in-
jury received at the time of the accident.

5. In an action for personal injuries caused by negligence it is not nec-
essary to a recovery that the plaintiff's subsequent condition should

be the "natural and probable" result of his injuries; it is sufficient if the damage claimed legitimately flows directly from the negligent act, whether it might have been foreseen by the wrongdoer or not.

6. In such a case it is error to permit an expert witness to give his opinion as to the necessity of medical attendance and the services of nurses for plaintiff in the future, and as to the extent to which such medical attendance would be required. DODGE and WINSLOW, JJ., dissent.

7. Plaintiff's recovery not being excessive, the error in including future medical attendance and nursing as an element of damages may be cured, at plaintiff's option, by the remission from the verdict of such sum, fixed by the supreme court, as will leave it reasonably certain that no injustice is being done.

APPEAL from a judgment of the circuit court for Rock county: R. G. SIEBECKER, Judge. *Reversed.*

· This is the second appearance of this case in this court. Upon the former appeal a judgment for plaintiff was reversed, and the cause was remanded for a new trial. 102 Wis. 196. The case was tried again upon substantially the same testimony, the same special verdict was submitted to the jury, and like answers returned as in the former trial. It seems unnecessary to restate the facts. For convenience, the special verdict is given.

"(1) Was the culvert in question so constructed and maintained as to conduct through it the water which it was intended to conduct through, not only in ordinary showers, but in severe showers that would naturally occur during a series of years, and which could reasonably be anticipated? *A.* No. (2) Was the culvert in question negligently and carelessly constructed and maintained by the defendant company, or its agents or employees, so as to render it inadequate for the purpose for which it was constructed? *A.* Yes. (3) Was the said culvert carefully and thoroughly inspected from time to time by the employees of the company whose duty it was to give such inspection? *A.* It was not. (4) Did the nearness of the gravel pit to the culvert,

Crouse vs. Chicago & Northwestern R. Co.

in the month of July, 1896, render said culvert unsafe, in view of the water that might be conducted through it? *A.* Yes. (5) Was the rainstorm on the night of July 26, 1896, extraordinary, unusual, and unexpected in its character, or unprecedented, and one which had only occurred at such long and irregular intervals that it would not be anticipated by men of ordinary prudence in their business calculations? *A.* No. (6) Might the washout in the track have been discovered by the defendant railroad company by reasonable and proper inspection, and in time to have prevented the accident? *A.* Yes. (7) Was the storm which occurred on the night of July 26, 1896, one likely to cause damage to the defendant's roadbed and track where the culvert in question was situated? *A.* Yes. (8) Was the defendant's servant Stageman guilty of any negligence in not properly and carefully inspecting the road near where this culvert was, on the night in question? *A.* Yes. (9) Was the plaintiff in the exercise of ordinary care at and prior to the time of his injury? *A.* Yes. (10) Was the plaintiff injured on the night in question in consequence of the washout, without contributory negligence on his part? *A.* Yes. (11) What damages has the plaintiff sustained in consequence of the injury received on the night in question? *A.* $20,000."

Judgment was entered for plaintiff, and the defendant appeals.

For the appellant there was a brief by *Fish, Cary, Upham & Black,* attorneys, and *Edward M. Hyzer,* of counsel, and oral argument by *Mr. Hyzer.*

For the respondent there was a brief by *Fethers, Jeffris & Mouat,* and oral argument by *O. H. Fethers* and *M. G. Jeffris.*

BARDEEN, J. 1. Questions 1 and 2 of the special verdict related to the manner in which the culvert where plaintiff was injured was constructed and maintained. The jury

found that it was not so constructed and maintained as to conduct through it the water reasonably to be anticipated as likely to come there during a series of years, and that it was so negligently and carelessly constructed and maintained as to be inadequate for that purpose. In the opinion of defendant's counsel the court ought not to have submitted these questions, because there was no evidence in the case to warrant their submission, and because they do not cover any issue raised by the evidence. It is unnecessary to enter into any lengthy discussion of the evidence. It is sufficient to say that, in our opinion, there is not only evidence enough to warrant their submission, but ample to support the jury's conclusion. The culvert was about two feet square. The water naturally coming there was drained from quite an extended tract of land. The ground in which the culvert was placed was sand and gravel, easily susceptible to the action of water. This is a matter of common knowledge. The opening was so small that water would dam up and require some time to get through. A few weeks before the accident, the culvert had partially washed out; so much so that the west end had dropped down, and the water had made a great cave in the side of the road-bed. When the workmen went to replace it, they found the planks were old and rotten. The digging away of the gravel to the west, as the jury found, made the situation more dangerous and unsafe. The fact that the culvert had existed a number of years without having been washed out is of little significance when we come to consider that the excavation of the gravel pit at the west side was of recent origin. That such excavation greatly increased the danger of washing is established by the evidence and found by the jury. Under these circumstances the submission of these questions and the finding of the jury thereon seem quite proper.

2. The defendant requested the court to submit two questions as a part of the special verdict, relating to the facts of

whether a man of ordinary prudence, under the circum-
stances, would have excavated the gravel at the west of the
track, and whether he ought reasonably to have expected
that such excavation would be likely to cause an injury to
defendant's servants.   The argument in support of the sub-
mission of these questions is based upon the contention or
assumption that there was no testimony to support the sub-
mission of questions 1 and 2, above referred to.   Without
such assumption this argument has no foundation.   It being
an undisputed fact in the case that the culvert had partially
washed out a few weeks before the accident by reason of
the close proximity of this gravel pit, and it being found
that the culvert was so constructed and maintained as to
render it inadequate for its purpose, it is difficult to see why
the questions requested should have been submitted.   As
said in the former opinion: "If the bridge was constructed
for the passage of heavy trains over it, and was negligently
and unsafely constructed, the destruction of a train and the
loss of human life thereon must necessarily be contemplated
by any reasonable man who builds it.   He cannot say he did
not anticipate an accident."

3. On the question of contributory negligence the court
submitted questions 9 and 10, as above stated.   The defend-
ant requested the submission of questions as follows: (1) "As
the plaintiff approached the locality of the culvert in ques-
tion, were indications of high water, which would cause
damage, observed by him?"   (2) "Was the plaintiff notified
between Koshkonong and Milton Junction that there had
been a heavy rain and the sides of the track were washed?"
(3) "As the plaintiff approached the culvert in question, was
he keeping his train under complete control and at such
speed that it could be stopped after coming in sight of any
obstruction or damage to the track in time to prevent acci-
dent?"   (11) "Did a violation by the plaintiff of any rule
or rules of the company contribute to his injury?"

On the former trial of this case one of the strongest con-

tentions was that the evidence conclusively showed that the
plaintiff was guilty of contributory negligence. As will be
noted in the former opinion this claim was based upon cer-
tain rules of the company which required the engineers in
charge of trains to exercise great care in keeping their trains
under control during rainy spells, and great reliance was
placed on Rule 414 as fixing the standard of care which it
is claimed was violated. Several questions were proposed
similar to the ones asked on the second trial, and, in addi-
tion, the defendant asked the court to instruct the jury that,
if plaintiff was running his train in violation of any rule of
the company, he was not in the exercise of ordinary care.
Other instructions of like import were requested, and all
were refused. At no place in his charge did the court refer
specifically to any violation of the rules of the company as
being negligence, nor was that question specifically covered
by any question in the special verdict. Upon this condition
of the record, and after a careful review and consideration
of the same, this court held that contributory negligence as
a matter of law was not conclusively established; that the
refusal to submit the questions requested was not error;
that the questions submitted covered all of the material
issues in the case; and that the refusal to charge did not
constitute reversible error. A precisely similar situation is
presented on this trial, except that the defendant made no
request that the court should charge the jury that a vio-
lation of the rules of the company would be negligence.
Hence it will be seen that the case is not as strong in favor
of the defendant as on the former hearing. Case after case
has been considered and approved by this court where the
submission of the question of contributory negligence was
substantially the same as in this case. A few of the recent
cases are here noted: *Klatt v. N. C. Foster L. Co.* 97 Wis.
641; *Wilber v. Follansbee*, 97 Wis. 577; *McDougall v. Ash-
land S. F. Co.* 97 Wis. 382; *Kenyon v. Mondovi*, 98 Wis. 50;

*Welty v. Lake Superior T. & T. R. Co.* 100 Wis. 128. In
*Raymond v. Keseberg,* 98 Wis. 317, this court said: "The
form of the questions is to be determined by the trial court;
and so long as they conform to the requirements of the stat-
ute and cover the material issues there can be no error."

But a paramount reason why we must hold the verdict
submitted on this trial sufficient, and as covering all the
material issues in the case, is that it was so decided on the
former hearing. It stands as *res adjudicata* and, whether
right or wrong, is the law of the case. *Case v. Hoffman,*
100 Wis. 314. The question of whether the plaintiff was
running his train in violation of any rule of the company is
a mere evidentiary fact from which the inference of negli-
gence might arise. While, perhaps, it would have been
better practice to have submitted the fact squarely to the
jury by a question similar to the one requested, and a re-
fusal to instruct the jury thereon might be prejudicial error
within the rule laid down in *Hennesey v. C. & N. W. R. Co.*
99 Wis. 109, and *Dugal v. Chippewa Falls,* 101 Wis. 533, yet,
so far as this case is concerned, the question has been fore-
closed by the former decision.

But it is said the requests to find, under former decisions
of this court, are equivalent to requests to charge on the
particular point suggested, or are sufficient to call the court's
attention to the fact, and a neglect to charge is error. We
admit the existence of the rule, within the decisions men-
tioned, and that it is a just and proper one, but its applica-
tion to this case must be denied because of the former de-
cision. On the former hearing the questions, with a request
to charge, were before the court. Admitting the applica-
tion of the rule before mentioned, the situation now pre-
sented is in no way different. Undoubtedly the judge who
presided at the last trial made a study of the former record.
This is evidenced by the fact that he declined to change
the form of the special verdict, because it had met the ap-

proval of this court. The two situations being precisely the same in legal effect, what was said in the former opinion, which seems to fully cover the question at issue, leaves us powerless to make a different ruling, if we were so disposed.

4. On the second trial the medical experts were able to state with some degree of certainty that plaintiff's spinal cord was permanently affected. One of the witnesses was quite certain that he was suffering from sclerosis of the spinal cord, and another testified that it was his belief that chronic meningitis was the disease. Both agreed that the spinal cord was greatly affected, that the plaintiff was in a helpless condition, and that such condition was reasonably certain to continue and grow worse as time passed. Upon cross-examination the doctors testified that sclerosis or meningitis might be produced by external violence, colds, rheumatism, gout, and other causes. The conditions they found were somewhat different than those presented on the first trial, and because of lapse of time and the development of the disease they were able to judge with greater certainty as to the probable cause and consequences of the plaintiff's diseased condition. The defendant claims that because of these changed conditions, and because the doctors testified that the diseases mentioned *might* result from other causes than those shown to be present in this case, the court erred in not submitting to the jury the questions directed to the inquiry of whether the plaintiff's present condition " was the natural and probable result " of the injuries he received at the time of the accident.

The medical testimony was in no dispute as to his physical condition. Both of the doctors were witnesses for plaintiff, and described his condition at length, tracing the progress of his disabilities from the time of the first examination down to the last trial. Both agree that his present condition is attributable to the injuries he received. The evidence is undisputed that up to the time of his injury plaintiff had been

Crouse vs. Chicago & Northwestern R. Co.

a healthy, robust man, and in the continuous service of the company for upwards of sixteen years. He met with an injury and became a helpless paralytic. His injuries were of such a character as to lead to the results found. Now it is urged that all the evidence we have in the case that plaintiff's present condition is the result of the accident is the expert testimony, and that, because the doctors disagree as to the exact name of his disease, and their testimony shows that either of the diseases named by them *might* have been produced by other causes, the jury should have been interrogated in the line above suggested, and to fail to do so was error. We admit that there are experts and experts; that many of them testify like retained witnesses, and very much of such testimony is of little more value than an intelligent guess. Yet in its legitimate field, given by men whose conception is not measured by the horizon of the parties' interests in whose favor they testify, such testimony is most valuable and helpful. There is, however, no occasion to attack it in this case. The changed condition in which the plaintiff is claimed to be nearly three years after the accident is accounted for by the doctors as the necessary consequence of the development of the injury to his back. Whether it be called *sclerosis* or *meningitis*, it matters not. The injury is certain, and no doubt would be just as severe and just as disabling if it were called simple backache. It is not the name of the difficulty, but the *fact*, that is important. The fact being in proof that plaintiff was healthy and robust before the accident, that he received the injury described, that the symptoms and results have followed in regular sequence, and in absolute consistency with a severe injury to the back, coupled with the opinion of the doctors that this condition may be directly attributed to the accident, the conclusion that it is so attributable cannot be weakened or upset by the mere suggestion of possibility that this condition may have arisen from other causes. Especially

is this true when there is no claim that the injured party
has suffered from any other disturbing or producing cause
than the one testified to. Neither is it strictly proper to in-
quire whether the plaintiff's *condition* is the " natural and
probable " result of his injuries. Under the rule of proxi-
mate cause the damages must be proximate to the wrongful
act; that is, they must follow the negligent act in unbroken
sequence, without any intervening independent cause to
break the continuity. *Mueller v. Milwaukee St. R. Co.* 86
Wis. 340. The subsequent condition of the injured party
may have been caused in part or aggravated by some pre-
disposition to disease, as in *McNamara v. Clintonville*, 62
Wis. 207, and yet the defendant would be liable. It is not
necessary to a recovery that the defendant should have fore-
seen the exact injury shown. It is sufficient if the damage
claimed legitimately flows directly from the negligent act,
whether such damages might have been foreseen by the
wrongdoer or not. *Brown v. C., M. & St. P. R. Co.* 54 Wis.
342; 3 Suth. Dam. § 1244; *Jucker v. C. & N. W. R. Co.* 52
Wis. 150.

5. The defendant further complains because Dr. Gibson,
plaintiff's attending physician, was permitted to testify that
the plaintiff would require medical attendance and services
of nurses in the future. This testimony comes very close to,
if not over, the forbidden line. It was proper for the doctor
to describe his patient's condition, to state to what extent he
was disabled, his inability to care for himself, and to state
any other circumstance within his observation and knowl-
edge bearing upon the reasonable certainty of a continuance
of these disabilities in the future,— that is to say, he might
give evidence as to the physical facts, and his opinion upon
the permanency of existing conditions; but when he has
testified that the injury is permanent and that the patient is
paralyzed and helpless, it seems hardly necessary or proper
to permit him to enter the domain of common knowledge,

Crouse vs. Chicago & Northwestern R. Co.

and say that because of these conditions the injured person will require nursing and medical attendance in the future. When conditions so palpable as were shown in this case are under consideration, it does not require the aid of an expert to reach the conclusion that both nursing and medical attention would be necessary in the future. The jury were as able to arrive at that conclusion without the aid of his opinion as with it. While cases may arise in which such testimony may be considered proper, we have no disposition to increase the range or broaden the field that may be covered by it until that class of cases is reached. In *Simonds v. Baraboo*, 93 Wis. 40, this court held that the admission of evidence of the usual and customary way of loading and hauling wood on a wagon was prejudicial error, because it was a matter of common knowledge and the testimony might have been harmful to defendant. Applying that rule to the facts in this case, the conclusion we have reached finds ample support.

But plaintiff's counsel was not content to show by the expert the necessity of future medical attendance and nursing as a matter of opinion. The following question and answer were admitted, against proper objection: "(2) To what extent, in your judgment, will the attendance of a physician be necessary in the future, so long as the plaintiff shall live? *A*. Well, I should think it would vary. At present, I should think, once a week. As time goes on, I should think, oftener." From the very nature of the case it was impossible for any one, even though he be an expert witness, to know to what extent a physician's services would be needed in the future. The doctor's answer shows that he was ranging around in the field of speculation and conjecture. No criticism is intended of the witness, for he was undoubtedly giving his best judgment upon the extremely precarious data at his command. It is the lane leading to a very broad field we are fencing. We need not enter its broad acres. If we were to once open the gate, there is no limit that we can

foresee to which the fertility of counsel will not go. Opinion evidence is dangerous unless confined to its legitimate scope. The necessities of litigation have demonstrated the propriety of permitting the plaintiff to call upon experts to assist in establishing the condition, the cause of the condition, and the reasonable certainty that such condition will be permanent. To that extent it is legitimate and proper. No case is called to mind that extends the rule beyond this limit. If the expert may testify to the future necessity of medical attendance, and its frequency, there is very little left for the jury. A prime objection to such testimony is the difficulty on the part of the other side to meet it. One doctor might say that attendance would be needed daily, another weekly, and still others at variant periods. One man calls the doctor at the occurrence of the first symptoms, while another doctors himself or awaits the development of the trouble. With these conditions present as a part of human experience, a jury would find themselves floating in the realm of doubt and speculation, with very little that was solid or substantial to tie to if the door of the future should be opened to the extent suggested. It is our duty to keep the administration of justice as unembarrassed as possible, and it can best be done by freeing it of as many uncertainties as possible. We are loath to broaden the range of expert testimony, and are therefore compelled to hold that the testimony mentioned was distinctly improper and prejudicial. Its badness was emphasized by the use made of it by plaintiff's counsel in their argument to the jury. It was singled out as a definite item of damages, at a specified rate per year, and dwelt upon with the suggestion that it would increase in the future. Its tendency was to increase the damages and swell a recovery.

This is the only prejudicial error discovered in the case. The same kind of testimony was offered and received on the former trial, although its reception was not assigned as error. Two juries have returned the same verdict. From their stand-

Crouse vs. Chicago & Northwestern R. Co.

point, the plaintiff is entitled to substantial damages. The verdict is large, but we cannot say that it is unwarranted, or the result of passion or prejudice, except in the particular noted. Undoubtedly it was increased by the testimony hereinbefore condemned. Of course, it is impossible to determine with certainty how much was allowed on this item of damages. Considering the nature of plaintiff's injuries, and the fact that his days of usefulness are at an end, we would not say that a verdict for the full amount would be too large. But the jury has fixed that as the limit for his entire recovery, inclusive of the objectionable items mentioned. Upon the precedent established in *Baxter v. C. & N. W. R. Co., ante,* p. 307, it is proper, in the interest of justice and to end litigation, for this court to fix a sum to be deducted from the recovery that will leave it reasonably certain that no injustice is being done. While I was not in favor of the rule established in that case, it is the law in this state, and this is considered to be a proper case in which to administer it. As has been stated, the plaintiff is suffering from a most serious and incurable injury, and his condition is almost certain to grow worse instead of better. The objectionable element of damages included in the verdict could not have increased the recovery to any very great extent. A full and careful consideration of the whole case has led us to conclude to exclude from the recovery the sum of $2,000, giving the plaintiff the option either to reduce his judgment that amount or submit to a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial, but with an option to plaintiff within twenty days after the filing of the *remittitur* to take judgment against the defendant for $18,000 and costs.

DODGE, J. I find myself unable to concur in the conclusion that there was error in receiving as expert evidence the opinion of Dr. Gibson to the effect that the plaintiff would

require assistance in the way of nursing and would require medical attendance in the future. As to the first element, while I think the evidence approached closely the field of common knowledge, from which expert testimony should be carefully excluded, I do not think it prejudicially crossed the line. It went no further than to describe the extent of the present disability and needs of the patient, and to declare the probability of their continuance. The plaintiff's counsel attempted to go much further, and to prove by the medical expert how many nurses or attendants would be requisite; but were restrained by the court. The necessity for future medical attendance, however, seems to me to present a field in which the opinion of a physician may be very valuable, and in which nonprofessionals may be much at sea without it. We have in this case severe spinal injury and disordered nervous system. Some of us know, in a general way, that from disturbance of the nerves may result the most varied local or functional troubles. We hear of bad action or nonaction of the kidneys, of the stomach, bowels, heart, and lungs, as mere symptoms of disturbed nervous system; but can the nonmedical man judge whether a given nerve injury will produce one or another of these symptoms, or at what intervals? Some of these troubles may and some may not be alleviated by medicament or medical treatment. Indigestion probably might; paralysis of a limb probably could not. Now, a physician should be able to form an opinion whether the known injury is reasonably likely to exhibit itself in one form or another, and, approximately, how frequently. If so, why may he not testify either to what, in his opinion, such symptoms will be, or, more generally, that they will be such as to require attention or treatment by a physician? That is not invading the ground of common knowledge, but merely invoking the peculiar knowledge and opinion of the medical expert. True, it may be uncertain, but all opinions as to future conditions involve uncertainty.

That, however, has never been held a ground for their exclusion altogether. The privilege of cross-examination is accorded the other party for the very purpose of bringing before the jury the sufficiency of the premises on which they are founded, and the measure of certainty with which they can be given, and eliminating any part of an answer which is thus found to be mere general conjecture and not proper expert opinion.

WINSLOW, J. I concur in the foregoing dissenting opinion of Mr. Justice DODGE.