KOEHLER, Administrator, Appellant, vs. WAUKESHA MILK
COMPANY, Respondent.

*March 10—May 11, 1926.*

*Death: Broken milk bottle cutting finger: Subsequent blood poison-
ing: Pain and suffering: Action by estate of deceased:
Survival: Action for wrongful death: Joinder of actions:
Negligence: Resulting damages: Failure to procure medical
attention: Contributory negligence of husband of injured
person: Intervening negligence: Question for jury.*

1. Under the conflicting evidence in this case it is *held* that it
   was within the province of the jury to find that a milk
   bottle with a fractured rim was delivered to the apartment
   of deceased, that she cut her finger thereon, and that the
   cut was the portal through which the poison entered her
   system.   p. 55.
2. A cause of action for pain and suffering due to an injury
   survives the death of the person injured, under sec. 331.01,
   Stats., and the right to maintain such a cause of action vests
   in the representative of the estate of decedent, the proceeds
   when collected being treated as personal property assets of
   decedent's estate and distributed according to law.   p. 56.
3. To entitle a party to recover under sec. 331.03, Stats., the
   wrongful act charged to have caused such death must have
   been such as would, if death had not ensued, have entitled
   the party injured to maintain an action, and the death must
   have been caused in this state.   p. 56.
4. An action by decedent's representative under sec. 331.01, Stats.,
   for the pain and suffering caused decedent is a distinct and
   separate action from one under sec. 331.03, and a recovery
   under both is not a double recovery but a recovery for a
   double wrong; and the two actions may be joined in one
   complaint.   p. 56.
5. In this case the negligence of the husband in the care and
   treatment of his wife's finger would not defeat the right of
   her estate to recover damages for the pain and suffering of
   decedent.   p. 57.
6. Upon facts warranting a finding of actionable negligence,
   responsibility arises for all consequent damages naturally
   following the injury, whether such damages were reasonably
   to be anticipated or not, provided there is no break in the
   natural sequence or continuity between the injury and the
   result by any independent or intervening causes.   p. 60.

7. Whether death from blood poisoning was caused by defendant's negligence in delivering the broken bottle or from some intervening act is a question for the jury. p. 63.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Reversed.*

The plaintiff and deceased were married in 1921. In February, 1922, a son was born, still living. Plaintiff claims and the jury found that on the morning of December 11, 1922, there was delivered to him by defendant a quart bottle of milk at the apartment then occupied by plaintiff and his family and others; that such bottle had a chip of glass broken off, leaving a fractured portion extending about one inch along the top edge and downward for about three fourths of an inch and through the curved top rim, and that in picking up such bottle the deceased cut the second joint of the fourth finger of her right hand, and that her death was proximately caused by the negligence of defendant in delivering such bottle.

Plaintiff's testimony further disclosed that remedies were applied by himself and the deceased, the finger was bandaged, and she continued some of her household duties for a time; she complained of pain the next day, and of very severe pain in four or five days; that on December 26th she walked a distance of several blocks and visited Dr. Taugher, and made the last visit to him at his office on December 28th; that on December 31st she went to bed and did not rise again. On January 1st Dr. Taugher made a visit at the house, and on the 2d or 3d made an incision on said finger, removing some small hard substance from the same. Another physician was called in consultation on January 4th. From that time on deceased suffered great pain until her death from septicemia with a secondary infection of the face on January 8, 1923.

April 20, 1923, plaintiff was appointed administrator of her estate and brought this action to recover for her pain

and suffering; for the expenses; and for the pecuniary loss to the husband. Plaintiff married again in June, 1923, and his child was taken care of by his mother since January, 1923.

Defendants showed that some 36,000 quart bottles were handled and examined daily for milk distribution. They were inspected in several departments and eight to ten dozen daily rejected because found broken or defective. The driver in question, making about two hundred and thirty stops and delivering over two hundred such quarts daily, at this time using canvas gloves, seizing and carrying each full bottle by the top by thumb and fingers and inserting his fingers in the empties in carrying them back to the wagon, was also charged with the duty of returning without delivery any bottle in the condition this bottle was found by the jury to have been in that morning.

The following are other material parts of the special verdict as answered:

(6) Mrs. Koehler did not fail to exercise ordinary care in the care and treatment of the finger.

(8) *Mr. Koehler* failed to exercise ordinary care in the care and treatment of his wife's finger.

(9) Such failure as found in question (8) proximately contributed to Mrs. Koehler's death.

(10) If plaintiff be entitled to recover, then—

(1) Two thousand dollars damages to the estate of Erma Koehler by reason of pain and suffering.

(2) No damages for pecuniary injury sustained by *Frank J. Koehler* as the result of the death of his wife.

(3) Six hundred and seventy-three dollars damages for expenses for medical treatment.

Upon motions by the respective parties the court directed judgment in favor of the defendant on the ground that upon questions (8) and (9), *supra,* as answered by the jury, the negligence of the husband in the care and treatment of the

injured finger was such as to defeat the plaintiff's right to recover, and dismissed the complaint.

From the judgment plaintiff has appealed and defendant seeks review of the trial court's denial of several of its motions after verdict.

For the appellant there were briefs by *Swietlik & Burns* of Milwaukee, and oral argument by *George A. Burns.*

*J. P. Beuscher,* attorney, and *W. A. Hayes,* of counsel, both of Milwaukee, for the respondent.

ESCHWEILER, J. Upon the conflict of evidence in this case we cannot say that it was not within the province of the jury to find as they did on the material facts of this case, namely, that a quart milk bottle with a fractured rim was delivered at the apartment occupied by the plaintiff and the deceased on the morning in question, and that Mrs. Koehler did cut the fourth finger of her right hand while lifting said bottle, and that the cut in question was the portal through which the fatal infection penetrated her blood stream, by reason whereof her death ensued.

Assuming that the negligence of defendant in delivering the bottle in the condition aforesaid can be held to be the proximate cause, in the eye of the law, for the resulting pain, suffering, and death of Mrs. Koehler—a question to be discussed later,—a cause of action arose forthwith in favor of Mrs. Koehler in her lifetime for the consequent pain and suffering intermediate the cutting of the finger and her death. Such cause of action, if any such there was, survived her death by express statutory provision, sec. 4253, now sec. 331.01, which now provides that there survives, in addition to the actions surviving at common law, actions for assault and battery, false imprisonment, or other damage to the person. This includes personal injury actions. *Lehmann v. Farwell,* 95 Wis. 185, 189, 70 N. W. 170; *Brown v. C. & N. W. R. Co.* 102 Wis. 137, 141, 170, 77 N. W.

748, 78 N. W. 771; *Nemecek v. Filer & Stowell Co.* 126 Wis. 71, 72, 105 .N. W. 225; *Klann v. Minn,* 161 Wis. 517, 518, 154 N. W. 996.

The right to maintain such cause of action vests in the representative of the estate of said deceased, and the proceeds when collected are treated as personal property assets of the estate of said deceased and to be so distributed according to law.

Such cause of action is a separate and distinct one from the cause of action, purely statutory, given by sec. 4255, now sec. 331.03, which substantially follows the so-called Lord Campbell's Act of England in 1846, abolishing here and there the common-law rule that for the death of a person there could be no damages recovered in favor of any survivor.

The conditions requisite for a recovery under such death statute are that the wrongful act charged to have caused such death must have been such as would, if death had not ensued, have entitled the party injured to maintain an action, and the death must have been caused in this state. Sec. 331.03, *supra.* Suit may be brought in the name or names of those to whom the amount recovered shall, by the statute, belong as therein specified.

The two actions, however, are separate and distinct,— the one for the pain and suffering, present and enforceable from the moment of the injury; the one for the benefit of the survivors by reason of the death inchoate, so to speak, from the time of the injury to the consequent death, but ripening then and upon that event into the second and separate cause of action. As said in *St. Louis, I. M. & S. R. Co. v. Craft,* 237 U. S. 648, 658, 35 Sup. Ct. 704, the one is for the wrong to the injured person, the other to the beneficiaries or survivors for their pecuniary loss; one begins where the other ends. It is not a double recovery, but a recovery.for a double wrong. The two separate causes

may be joined in one complaint, as was done here.  *Nemecek v. Filer & Stowell Co.* 126 Wis. 71, 105 N. W. 225, *supra.*

By the special verdict the jury assessed the sum of $2,000 as compensation for the pain and suffering undergone by Mrs. Koehler consequent upon the injury, this being the cause of action that survived, and found that the surviving husband, who under the death statute would be entitled to recover, suffered no pecuniary loss or injury by reason of the death of his wife.

The $2,000 damages for pain and suffering, if recovered, belong as personal property to the estate of Mrs. Koehler, subject to the payment of her debts, and to be distributed, in the absence of a will, according to the statute, namely, to the surviving child, and not to the husband.

The trial court was wrong, therefore, in holding that the negligence of the husband of the deceased in the care and treatment of the wife's finger, as found by the jury, was contributory negligence such as defeated the right of the estate to recover the $2,000 damages.  The only contributory negligence that could be a bar to the right to recover on behalf of the estate for the pain and suffering would have been contributory negligence by Mrs. Koehler herself, and of all this she was acquitted, and quite properly so, by the jury.

The substantial and difficult matter still remains for determination as to whether or not there can be sustained a recovery in favor of the estate of Mrs. Koehler for her pain and suffering from blood poisoning preceding her resulting death.  It presents very sharply and distinctly the question whether one who fails to exercise ordinary care, as that term is recognized in the law of negligence, in his acts, so as to avoid that which would ordinarily, and in the vast majority of cases, result in but a slight cut or puncture of the flesh by fractured glass, as here, or, as it might well be, from a nail, pin, tack, pocket-knife, splinter, or any of the almost

infinite ways in which such things occur in daily life, and which cuts or punctures, as is common knowledge, in the vast majority of instances are disregarded or have but self or home attention, and which, if followed by a lawsuit, would properly result in slight or but nominal damages, must nevertheless be held answerable for very substantial damages when the unexpected, extraordinary, and that which is out of the usual course of events, follows as a result?

Clearly the legal duty of ordinary care required in the manner of unloading a car of cordwood is very different in substance from that which is required under the same standard of ordinary care in the manner used in unloading a car of dynamite; recklessness in the latter may still well be far within the limits of ordinary care as to the former; yet each, nevertheless, has the same measuring stick, that is, that the jury are to find whether or not, in their judgment, the care exercised in each particular instance was that exercised by the great mass of mankind under the same or similar circumstances, or that exercised by that hitherto undiscovered individual, the average man.

Yet in failing to exercise ordinary care to avert that which, in the overwhelming majority of the same or similar situations, is naturally, probably, and within the field of reasonable anticipation and the experience of the average human, followed by slight or immaterial results and damages, must such person, so failing, nevertheless respond in damages to the full extent thereof when to such slight and to be anticipated results there are added unusual, extraordinary, and, as in this case, tragic elements? Or, as applied to the instant case, whether blood poisoning, which may well be within the field of reasonable anticipation of one failing to exercise due care in the management of an instrumentality of power and capacity naturally, likely, and clearly efficient to inflict substantial injury such as is a railroad train, automobile, electric power, gun, and the

Koehler v. Waukesha Milk Co. 190 Wis. 52.

countless powerful adjuncts of modern life, and where substantial injury is so probably a natural consequence, also to be held as within the field of consequential damages in the other class of cases above stated? Or should it be held that such unexpected and unusual results are too remote to be within the field of consequential damages as legally recognized in tort actions where recovery is sought for mere negligence, i. e. the mere lack of the degree of care exercised by, or, more properly stated, perhaps, expected of, the great mass of mankind?

It may well be urged that to place such a suggested responsibility upon one charged with the duty of anticipating, guarding against, and avoiding that which ordinarily results in but slight or immaterial injury is in practical effect placing upon him the duty of extraordinary as distinguishable from ordinary care. For, strictly speaking, the phrase "ordinary care," as used in defining the duty of one to another, connotes the idea of thereby avoiding the "ordinary results" of any lack of "ordinary care," and to properly connote the duty of avoiding unusual or extraordinary results would seemingly require the use of unusual or extraordinary care. But here, as in many other instances of legal phraseology, the supply of definite, precise, and absolutely accurate terms is far short of the demand.

But, on the other hand, to deny to a person innocent of any wrong-doing compensation for injuries and results therefrom which would not have occurred except for the negligence of a responsible person, would also, in many instances, work injustice.

In the choice thus presented between two interested persons, one breaching the duty the law imposed upon him of exercising due care, and the other being without fault, the law favors the innocent party and saddles the entire responsibility upon the one breaching his legal duty under

what must be held to be the rule of law in the choice by the courts of the second of these alternatives.

The distinction between a primary question of liability for the injury and a secondary one of liability for damages flowing therefrom has been directly pointed out or tacitly recognized in a number of decisions of this court. These rulings may be summarized as declaring that, upon facts warranting a finding of actionable negligence (which necessarily includes the element of reasonable anticipation that some injury might result from the act), then responsibility arises for all consequent damages naturally following the injury, whether such resulting damages were reasonably to be anticipated or not; provided, however, that there is no break of the natural sequence or continuity between the injury and the claimed result by any independent or intervening causes. For this doctrine see *LeBeau v. M., St. P. & S. S. M. R. Co.* 164 Wis. 30, 36, 159 N. W. 577, and cases there cited. Among such cited cases is *Crouse v. C. & N. W. R. Co.* 104 Wis. 473, 80 N. W. 752, where damages were allowed for paralysis resulting from an injury to plaintiff caused by defendant's culvert being out of repair, and it was said (p. 483) : "It is sufficient if the damage claimed legitimately flows directly from the negligent act, whether such damages might have been foreseen by the wrongdoer or not." To the cases there cited may be added *Vosburg v. Putney,* 80 Wis. 523, 50 N. W. 403, an action for damages caused by the plaintiff being kicked by a school companion, where it was expressed (p. 530) that the wrongdoer is liable for all injuries resulting directly from the wrongful act whether they could or could not have been foreseen by him. Almost the same language as in the case last cited is found in *McNamara v. Clintonville,* 62 Wis. 207, 22 N. W. 472, where an unlicensed physician with a then tendency to disease was held entitled to recover for loss of practice as well as personal injuries although

such resulting injury could not have been contemplated as the probable result of the act (p. 213). In *Kellogg v. C. & N. W. R. Co.* 26 Wis. 223, where defendant was held liable for damages from a fire started on its right of way and spreading to plaintiff's property, there was full discussion of the subject of whether such damages were too remote from the negligent act to be recoverable, and a similar discussion as to remote damages is found in *Oliver v. La Valle,* 36 Wis. 592, 598.

The Massachusetts court said in *Spade v. Lynn & B. R. Co.* 172 Mass. 488, 52 N. E. 747, that (p. 491) "the measure of defendant's duty in determining whether a wrong has been committed is one thing, the measure of liability when a wrong has been committed is another."

In *McGarrahan v. N. Y., N. H. & H. R. Co.* 171 Mass. 211, 50 N. E. 610, defendant was held responsible for the result of blood poisoning following a personal injury, even though such was not an ordinary incident of such wounds (p. 219); and in *Larson v. Boston El. R. Co.* 212 Mass. 262, 98 N. E. 1048, liability was sustained for the developing of tuberculosis into disease, though then latent in plaintiff's system, from an injury received by her hand being caught in a car door (p. 267). See, also, *Hartnett v. Tripp,* 231 Mass. 382, 385, 121 N. E. 17, and *Kentucky H. Co. v. Hood,* 133 Ky. 383, 118 S. W. 337, 22 L. R. A. N. s. 588. Discussion of this subject may be found in 1 Sutherland, Damages (4th ed.) p. 55; 1 Sedgwick, Damages (9th ed.) §§ 139, 142, 143; Mayne, Damages (9th ed.) p. 115; Arnold, Damages & Comp. 19; 17 Corp. Jur. 750, 751; 8 Ruling Case Law, 453.

Any seeming conflict between the conclusion above indicated—that responsibility for the original injury may carry with it responsibility for the unusual, unexpected, and unanticipated but natural consequence of such injury—and what is said in the two cases of *Hasbrouck v. Armour & Co.*

139 Wis. 357, 121 N. W. 157, and *Kerwin v. Chippewa Shoe Mfg. Co.* 163 Wis. 428, 157 N. W. 1101, is more apparent than real. In the first case the plaintiff purchased through a retailer a cake of soap manufactured by defendant and sustained blood poisoning, requiring amputation of part of the hand, by reason of puncture from a needle found imbedded in such soap; in the second, action was brought against the manufacturer on account of shoes purchased through a retailer, in one of which shoes a nail was imbedded causing similar infection and loss of part of the foot. In the former case language is used (p. 366) to the effect:

"There are no doubt well authenticated instances of severe illness and even death resulting from a puncture or scratch by a needle or a pin; but these are not ordinary consequences of such accidents, but are extraordinary and unusual consequences, which a person of ordinary prudence and discretion standing in this relation to the user or purchaser is not expected to foresee and provide against."

Each of these two cases was and could be disposed of by the holding there made of nonliability of the respective manufacturers and upon the established doctrine, recognized in many cases in this court and elsewhere, that, except under conditions not shown to exist in either of these cases, a manufacturer or wholesaler of such articles, having no contractual relations with the purchaser, sustains no liability to him. These two cases are discussed at length in the case of *Coakley v. Prentiss-Wabers S. Co.* 182 Wis. 94, 100 *et seq.,* 195 N. W. 388, holding a manufacturer of a gasoline stove negligently made liable to a purchaser.

What is meant by the limitation on this rule, viz. that there must be no intervening cause or break in continuity, is well illustrated in the case of *Scheffer v. Washington City, V. M. & G. S. R. Co.* 105 U. S. 249, where a passenger, so injured in body and mind in a collision as to become insane, some eight months thereafter killed himself,

the court holding (p. 252) that his self-destruction was a new and the proximate cause of the death, and that damages could not be awarded against the defendant for such death as traceable to or through the original injury. See, also, *Churchill v. United F. Co.* 294 Fed. 400, 402.

We are unable to say as a matter of law that there was shown any independent agency intervening the cut on the finger caused when Mrs. Koehler picked up the milk bottle and the subsequent discovery of the existence of the septicemia, so that as a matter of law it could be said that the infection occurred at some other time than when the cut was first made and entry of bacteria, if such were there, into the wound from the bottle, became possible, and so as to bring the situation here within the qualification to the rule above stated as to an intervening cause. Manifestly no direct evidence could be produced as to just when the infection invaded her system, but that it did is undeniable; and it was a proper exercise of a jury's judgment, under all the facts, to determine as far as humanly possible whether such occurred by and through defendant's negligence or from some intervening act. Under the evidence, both the source of infection and the cut in the finger can be as well or more properly attributable to defendant's negligence than to any other possible or suggested source, and it cannot be said that there is such an element of speculation or surmise on the part of the jury as should prevent their determination in this regard from being upheld.

Plaintiff moved the trial court to change the jury's answer to the eighth question of the verdict wherein he was found to have failed to exercise ordinary care in the care and treatment of his wife's finger. This motion should have been granted, for we can find no reasonable basis in the evidence to warrant such a harsh conclusion.

The jury found the damages for expenses for medical treatment to be the sum of $673. This amount and more

was, under the testimony, paid out and liability therefor incurred by the plaintiff himself and not treated or considered as an expense of the estate of Mrs. Koehler or as contracted for by her.   Plaintiff was entitled to such sum as a consequent and proper element of the damages resulting from defendant's negligence.

Judgment, therefore, is proper upon the verdict in favor of the plaintiff as administrator of the estate of Mrs. Koehler for the amount found by the jury as compensation for her pain and suffering as well as for the medical expenses.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the plaintiff for $2,673 damages and costs.